## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MV Food & Services S.r.l.,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 26-02962 |

## COMPLAINT

Plaintiff MV Food & Services S.r.l., by its undersigned attorneys, alleges the following:

1.      Plaintiff MV Food & Services S.r.l., ("Plaintiff") is an Italian importer, as defined in 19 C.F.R 101.1, and challenges the assessment of certain duties upon its imported merchandise.

2.      Beginning in February of 2025, through a series of executive orders, the President invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA Duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports.

3.      Plaintiff is the importer of record of high quality olive oil, wine, honey and other mediterranean foods from countries such as Italy and Turkey, that were subject to the IEEPA Duties and paid the IEEPA Duties on its imported goods. Plaintiff imports goods from various countries subject to IEEPA Duties, such as Italy and Turkey, into the United States.

4.      On February 20, 2026, the U.S. Supreme Court struck down the IEEPA Duties,

-1-

holding that IEEPA Duties were contrary to law, reasoning that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).[1]

5.     The Supreme Court also confirmed that challenges to the IEEPA Duties fall "within the exclusive jurisdiction of" the Court of International Trade. *Id*. at 5. Thus, this Court has jurisdiction and authority to order relief and refunds of IEEPA Duties paid by Plaintiff.

6.     For the reasons set out in *Learning Resources*, Plaintiff seeks a full refund from Defendants for all IEEPA Duties Plaintiff has paid to the United States, with interest as required by law.

7.     This individual action is necessary because, notwithstanding the fact that Plaintiff has standing as an importer of record which paid IEEPA Duties, Plaintiff may not be guaranteed a refund for those unlawfully collected IEEPA Duties in the absence of its own judgment from this Court. The United States has already stated that "it is not the government's position that every single importer will get a refund. Some may have to file a claim in this court."[2]

**PARTIES**

8.     Plaintiff MV Food & Services S.r.l., is incorporated and headquartered in Italy with its principal place of business in Province of Perugia, Italy, and is an importer of record for high quality olive oil, wine, honey other mediterranean foods on which IEEPA Duties were paid. Plaintiff imports goods from Italy and Turkey, which was subject to IEEPA

---

[1] This complaint cites to the "*Learning Resources*" slip opinion because that was the lead case at the Supreme Court for purposes of the case caption. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the U.S. Court of Appeals for the Federal Circuit's ("Federal Circuit") decision in *V.O.S. Selections* was affirmed.
[2] Stated by counsel for Defendants during a March 4, 2026 hearing in front of this Court in the case styled *Atmus Filtration, Inc. v. U.S., et al.* (Case No. 1:26-cv-01259-RKE).

Duties prior to the United States Supreme Court ruling in *Learning Resources.*

9. Defendant United States Customs and Border Protection ("CBP") is the United States agency that collects duties on imports. CBP collected IEEPA Duties payments made by Plaintiff and has already liquidated some entries to include IEEPA Duties.

10. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11. Defendant United States of America received the illegal IEEPA Duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i).

12. Defendants are referred to collectively in this complaint as "Defendants."

## JURISDICTION AND STANDING

13. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *Learning Resources*, slip op. at 5, n.1.; see also *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), cert. granted, No. 25-250, 2025 WL 2601020 (U.S. Sep. 9, 2025).

14. This Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

15. Plaintiff has standing to bring this lawsuit because it is "adversely affected or aggrieved by agency action within the meaning of the APA." 5 U.S.C. § 702; 28 U.S.C. § 2631(i). Plaintiff was adversely affected by the IEEPA Duties imposed by Defendants as it is the importer of record that was required to pay and did pay the unlawful IEEPA Duties.

16. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within

two years after the cause of action first accrues." 28 U.S.C. § 2636(i). On February 1, 2025, President Trump issued Executive Orders that resulted in the collection of IEEPA Duties. These Orders were published in the Federal Register shortly thereafter. The instant action is filed within two years of the date that these Orders were issued and published and within two years of the dates in which Plaintiff first paid the illegal IEEPA Duties.

<strong>FACTUAL AND LEGAL BACKGROUND</strong>

**I.      The IEEPA Tariff Orders.**

17.      On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs. Collectively, these are referred to in this Complaint as the "Trafficking Tariff Orders." Pursuant to these Orders, CBP assessed additional IEEPA duty upon Plaintiff's entries.

18.      The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties to Address the Situation at Our Southern Border* (Feb. 7, 2025), imposed an additional 25% tariff on the import of goods from Mexico, with certain exceptions.

19.      The executive order directed at Canada, Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025), also imposed a 25% tariff, with certain exceptions.

20.      Finally, the executive order directed at China, Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,121 (Feb. 1, 2025), imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.

21.      Four days later, on February 5, 2025, the President issued another order, Executive Order 14,200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in*

*the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025).

22.    The next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025) ("March 3 Amendment"). The March 3 Amendment raised the incremental tariffs on imports from China to 20%.

23.    On April 2, 2025, citing trade deficits with our trading partners as a national emergency, the President issued Executive Order 14,257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("Reciprocal Tariff Order"). The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id*. at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id*.

24.    On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. Exec. Order No. 14259*, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

25.    On July 30, 2025, President Trump issued Executive Order 14323, 90 Fed. Reg. 37739, *Addressing Threats to the United States by the Government of Brazil*, imposing additional *ad valorem* duty rate of 25 percent on certain products of Brazil.

26.    On August 6, 2025, President Trump issued Executive Order 14323, 90 Fed. Reg. 38701. *Addressing Threats to the United States by the Government of the Russian Federation,* imposing an additional *ad valorem* duty rate of 40 percent on certain products of India.

27.    Defendants directed changes to the Harmonized Tariff Schedule of the United States, requiring that goods subject to the challenged tariffs to be entered under new tariff codes.

28.    On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *V.O.S. Selections*, *et al. v. Trump*, *et al.*, No. 25-cv-00066 (Dkt. 2). As discussed below, this Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed. It was the Federal Circuit's decision that was, in turn, affirmed by the Supreme Court on February 20, 2026.

29.    President Trump, invoking IEEPA, has issued additional executive orders imposing additional IEEPA Duties and modifying others. As explained below, IEEPA does not authorize the President to impose tariffs. By this complaint, Plaintiff challenges those unlawful orders (the "IEEPA Tariff Orders") that affect the duty rates on goods imported from countries with whom Plaintiff does business and illegal IEEPA Duties paid by Plaintiff, which have caused Plaintiff's injury.

**II.    CBP's Implementation of the IEEPA Tariff Orders and Defendants' Agreement to Refund IEEPA Duties on Liquidated and Unliquidated Entries Found to be Unlawful**

30.    CBP is charged with the assessment and collection of duties, including the IEEPA Duties. 19 U.S.C. §§ 1500, 1502.

31.    When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, including the IEEPA Duties, after confirming the Harmonized Tariff Schedule of the United States ("HTSUS") classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

32.    Once CBP determines the final amount of duty, CBP "liquidates" the entry

and notifies the importer of record as to whether the importer owes more money or is entitled to a refund. 19 U.S.C. § 1500.

33.    Once liquidation has occurred, and if the liquidation is protestable, the importer of record has 180 days after liquidation to file a protest contesting the liquidation and any other CBP decisions encompassed therein. 19 U.S.C. § 1514(a).

34.    In *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) ("AGS"), a three-judge panel of this Court confirmed the authority of this Court to reliquidate entries subject to the IEEPA duties. *Id*. In a related action, the United States has represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025).

35.    In a third action, *Strato Technology Solutions, LLC v. United States et al.*, No. 25-322, ECF No. 14 at 4 (Ct. Int'l Trade) the U.S. Government represented that "defendants have made very clear—both in this case and in related cases—that they will not object to the Court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful."

36.    In *Strato Technology Solutions, LLC*, the U.S. Government also represented that "defendants have also committed to refund any challenged duties paid by plaintiff importers if such duties are found to be unlawful once there is a final, unappealable court decision ordering refund of such duties to plaintiffs." ECF No. 16 at 9.

**III.    The Supreme Court has held the IEEPA duties are unlawful.**

37.    The IEEPA Tariff Orders reference IEEPA, 50 U.S.C. § 1701 et seq., the National Emergencies Act, 50 U.S.C. § 1601 et seq., section 604 of the Trade Act of 1974, as

amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

38.    On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA Duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

39.    The Federal Circuit stayed this Court's decision and injunction, ordering an expedited briefing schedule and hearing.

40.    Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Duties are unlawful. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

41.    In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs. *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with argument on November 5, 2025.

42.    On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.

### IV.    Plaintiff Paid Unlawful IEEPA Duties.

43.    Plaintiff has paid substantial IEEPA Duties imposed by the Challenged Tariff Orders, and as of the filing of this complaint.

44.     Plaintiff has imported goods into the United States under new HTSUS codes from foreign countries, as it was required to do.

45.      Plaintiff has paid IEEPA Duties on numerous entries, some of which have already been liquidated by the CBP.

**V.      This Court Has Ordered the CBP to Refund IEEPA Duties**

46.      Following the Supreme Court's decision in *Learning Res., Inc. et al. v. Trump*, 607 U.S. __ (2026),  more than 2,500 IEEPA Tariff Cases have been filed, as of May 7, 2026, and all share a common objective of obtaining court-ordered refunds of IEEPA tariffs upon entry, plus interest.

47.      Originally ordered in *Atmus Filtration, Inc. v. United States, et al.* (Case No. 1:26-cv-01259-RKE), and now pending in E*uro-Notion Florida v. United States, et al.* (Case No. 1:25-cv-00595-RKE), the Court issued sua sponte orders on March 4, 2026 (in Atmus Filtration) and April 7, 2026 (in Euro-Notion) directing CBP to liquidate and reliquidate "any and all" entries subject to the IEEPA tariffs, without specifying a timeframe for compliance.

48.      On March 5, 2026, the Court narrowed this order to apply only to refunds involving a limited subset of IEEPA tariffs (i.e., specific IEEPA tariffs before the Supreme Court in *Learning Resources*).

49.      The Court further modified the order by an order issued on March 6, 2026, that suspended the previous order "to the extent that it directs immediate compliance".

50.      The Court further stated, "importers should be aware of the remedies available under 19 U.S.C. §1514 (Protest against decision of Customs Service)."

51.      In accordance with19 U.S.C. §1514 , if the Importer of Record protests the liquidation of certain entries, CBP is then required to either grant or deny the protest, in whole or in part. If the protest is granted, any duties that were improperly assessed must be

refunded. Although CBP has up to two years to make a decision, the importer can request an "accelerated disposition." If CBP does not act within 30 days of such a request, the protest is automatically deemed denied, allowing the importer to pursue judicial review before the Court of International Trade.

52.     On March 20, 2026, following a settlement conference held on March 19, 2026, the Court amended its March 5th order to "encompass all duties imposed by various Executive Orders pursuant to the [IEEPA], including those imposed on imports from Brazil and India."

53.     On March 27, 2026, Judge Eaton of the Court of International Trade further amended its previous March 20, 2026, Order to state that "any liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties."

54.     While U.S. Customs and Border Protection has now provided a mechanism to process refunds of certain IEEPA duties via CAPE Phase 1, that effort does not yet resolve Plaintiff's claims nor does it address Plaintiff's damages because Plaintiff does not currently have a bank account located in the U.S.

55.     In its instructions for creating an ACE portal account, the CBP requires recipients of any refunds to have a U.S. bank account because refunds will be paid electronically by Automated Clearing House (ACH).

56.     Due to this, Plaintiff currently cannot submit a claim administratively through CAPE Phase 1. Thus, Plaintiff's substantial harm from the unlawful execution and imposition of the unauthorized Executive Orders and corresponding payment of the IEEPA Duties is not currently addressed or resolved by CBP's Phase 1 of CAPE.

/ / /

/ / /

## COUNT I
### THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES*

57.     Plaintiff incorporates and reasserts the above-stated paragraphs above by reference.

58.     In Learning Resources, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this court's ruling and the Federal Circuit's affirmance of this court's opinion in V.O.S. Selections, Inc. v. Donald J. Trump, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), aff'd, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

59.     The Supreme Court held that all tariffs imposed under IEEPA are unlawful. The Supreme Court thus affirmed the Federal Circuit's decision, which for its part had affirmed this Court's ruling on the merits of the IEEPA tariffs. Learning Resources, slip op. at 21.

60.     The Challenged Tariff Orders purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA. The Challenged Tariff Orders were imposed upon Plaintiff pursuant to invalid orders and are also illegal.

61.     This Court is bound by the Learning Resources decision and therefore Plaintiff is entitled to refunds of all IEEPA duties it paid, , included those entries that have been liquidated and are final, with interest as provided by law.

62.     Plaintiff is also entitled to a reliquidation of those entries that include illegal IEEPA tariffs already liquidated by the CBP so that such entries do not include IEEPA tariffs.

/ / /

/ / /

## COUNT 2
## DECLARATORY RELIEF AND INJUNCTIVE RELIEF UNDER 28 U.S.C. § 2201

63.     Plaintiff incorporates and reasserts the above-stated paragraphs above by reference.

64.     Pursuant to the Supreme Court, the Challenged Orders exceed the authority of the President under Sections 1702 and 1701(b) of the IEEPA and are therefore invalid. Learning Resources, slip op. at 16, 20-21.

65.     The challenged tariffs were imposed upon Plaintiff pursuant to illegal orders and are therefore also invalid.

66.     Consequently, the assessment of tariffs issued against Plaintiff's imports pursuant to the Challenged Orders is likewise unlawful, and Plaintiff seeks declaratory and injunctive relief to protect itself against the unlawful implementation and liquidation of those illegal tariffs, as well as a declaration that already liquidated entries be reliquidated without the illegal tariffs and a refund of all amounts paid, with interest at the legal rate.

67.     To the extent that certain liquidated entries are final, Plaintiff seeks declaratory and injunctive relief that those entries should be refunded to Plaintiff, without regard to the status of liquidation, as the finality of such liquidation was illegal.


## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court issue an order:

a)   Directing the CBP to re-liquidate with no inclusion of IEEPA Duties, all of Plaintiff's entries that, as of the date of the Order, were liquidated with an assessment of IEEPA Duties;

b)   Ordering that for all of Plaintiff's entries that are unliquidated as of the date of this order, CBP shall liquidate those entries with no assessment of IEEPA Duties;

c)   Ordering that Defendants shall refund to Plaintiff any IEEPA Duties collected from Plaintiff, with interest as provided by law;

-12-

-13-

d)    Declaring that the President lacked authority under IEEPA to issue the Challenged Orders and that the collection by Defendants of tariffs pursuant to the Challenged Orders is and was unlawful with respect to Plaintiff;

e)    Declaring that all IEEPA entries that have been liquidated, be re-liquidated without the inclusion of IEEPA tariffs;

f)    Declaring that with respect to Plaintiff, CBP lacked the authority to implement and collect tariffs under the HTSUS based on the Challenged Orders

g)    Declaring that all final liquidated IEEPA entries be refunded;

h)    Award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

i)    Grant such further relief as this Court deems proper.


Respectfully submitted,


*/s/ Lisa Schachne*
Valla Morrison & Schachne Inc., P.C.
235 Montgomery Street, Suite 2240
San Francisco, CA 94104
Phone: 415-856-9001

Dated: May 11, 2026                    *Counsel for Plaintiff*